IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE MIDDLE DISTRICT OF FLORIDA

CIVIL DIVISION

_____

ADAM GOLDMAN, et al.,       )     Case No. 8.22 cv 549 CEH-SPF
            Plaintiffs,     )
                            )
v.                          )
                            )
GRADY JUDD, et al.,         )
            Defendants.     )

EMERGENCY

CIVIL RIGHTS COMPLAINT

(VERIFIED) w/

JURY DEMAND

A. PLAINTIFFS: (collectively, the "Plaintiffs")

1. ADAM GOLDMAN, Lead Plaintiff
   Polk County Jail
   Bk # 2142703
   2390 Bob Phillips Rd.
   Bartow, Fl. 33830;

2. Joshua M. Shaw
   Polk County Jail
   Bk # 2140826
   2390 Bob Phillips Rd.
   Bartow, Fl. 33830;

3. Charles Johnson
   Polk County Jail
   Bk # 2139704
   2390 Bob Phillips Rd.
   Bartow, Fl. 33830;

4. Jason Smith
   Polk County Jail
   Bk # 2138843
   2390 Bob Phillips Rd.
   Bartow, Fl 33830.

B. Defendants:   ("collectively, the "Defendants")

1.   GRADY JUDD - Sheriff of Polk County, Fla.
     1891 Jim Keene Blvd.
     Winter Haven, Fl. 33880;

2.   HOWARD L. DIMMIG, II - "Public Defender"
     P.O. Box 9000 - Drawer P.D.
     Bartow, Fl. 33831-9000;

3.   Ita M. Neymotin - "Regional Counsel"
     P.O. Box 9000 - Drawer P.D.
     Bartow, Fl. 33831-9000;

4.   Brian W. Haas - "State Attorney"
     P.O. Box 9000 - Drawer SA
     Bartow, Fl. 33831-9000;

5.   Polk County - Municipality
     P.O. Box 9000
     Bartow, Fl. 33831-9000;

Defendants continued...

6. STATE OF FLORIDA — "State"
4070 Esplanade Way
Tallahassee, Fl. 32399-2450;

7. Keith Spoto — Judge
P.O. Box 9000 — Drawer CC
Bartow, Fl. 33831-9000;

8. Michael McDaniel — Judge
P.O. Box 9000 — Drawer CC
Bartow, Fl. 33831-9000;

9. Donald Jacobson — Judge
P.O. Box 9000 — Drawer CC
Bartow, Fl. 33831-9000;

10. Chris Helinger — Judge
P.O. Box 9000 — Drawer CC
Bartow, Fl. 33831-9000;

11. Mark Carpanini — Judge
P.O. Box 9000 — Drawer CC
Bartow, Fl. 33831-9000.

Defendants continued...

12. Securus Technologies – "Securus"
P.O. Box 1109
Dallas, TX 75001;

13. JPAY
3450 Lakeside Drive, Ste 160
Miramar, Fl. 33027;

14. Global Tel-link – "GTL"
P.O. Box 1109
Dallas, TX. 75001;

15. Director – Department of Corrections – "FDOC"
4070 Esplanade Way
Tallahassee, Fl. 32399-2450;

16. Smart Communications US, Inc. – "email service provider"
10491 72nd Street
Seminole, Fl. 33777.

C. CLAIMS:

This is a Civil Rights complaint brought pursuant to 42 U.S.C. sections 1983 and 1985* by numerous pretrial detainees and inmates of the Polk County Jail in Polk County, Florida, for the acts and omissions of the Defendants who are altogether alleged to be a Racketeer Influenced Corrupt Organization having conspired and intentionally coordinated their efforts to overcrowd the jail, prisons, and courts' caseloads, extorting pretrial detainees and prisoners for monetary gain and economical growth, knowingly and intentionally transitioning and converting pretrial detention into cruel and unusual punishment before adjudication of guilt which has given rise to systemic violations of due process and equal protection of the laws in creating conflicted interests between the Plaintiffs and Defendants and Judges of Polk County and the State of Florida, leaving Plaintiffs without any alternative method for obtaining relief in the State courts, as it's Judges have financial interests in the outcomes of criminal cases and in overcrowding the jails and prisons.

* Request for exercise of Supplemental Jurisdiction over State Law Claims pursuant to 28 USC 1367.

1.    The Plaintiffs are pretrial detainees and inmates being held at the Polk County Jail and have been found to be "indigent" in their individual cases and have each been assigned either the Defendant Public Defender or Regional Counsel to represent them;

2.    The Defendants have conspired together to overcrowd the jails and prisons for monetary gain and economical growth of Polk County and the State of Florida, and, in so doing, have deprived Plaintiffs and similarly-situated indigent pretrial detainees of their constitutional rights to effective assistance of counsel, due process, and equal protection of the laws, more thoroughly alleged in the following paragraphs;

3.    The Defendants have an unwritten policy by custom of intentionally overcrowding the jail for monetary gain and in bad faith, in that, in addition to a $2.00 per day inmate housing fee charged to inmates, they receive percentages of sales, i.e., "kickbacks," from inmates' use of the Smart Communications email service provider and the

jails phone services (Securus) and canteen store purchases (canteen services which provide food, hygeine, etc..., at higher-than-normal rates above retail), for instance, a honeybun which is elsewhere .87 cents costs $1.87, small bags of chips which elsewhere cost .25 cents cost over $1.00; and ramen noodles which elsewhere cost .33 cents are priced over $1.00;

4.    Polk county District and Circuit Court Judges are paid by the State of florida who receives percentages of sales, i.e., "kickbacks", from State Prisoners' use of phone services, JPAY, and prisoner canteen store purchases, and because the state therefor capitalizes from overcrowding of its prisons, the Judges of the State of florida have a financial interest in convicting, imprisoning and overcrowding;

5.    The Defendants, in overcrowding the jail, have converted pretrial detention into cruel and unusual punishment before adjudication of guilt, in that, it is the policy by custom of Sheriff Grady Judd to confiscate every inmates' underwear during intake to the jail, and then provide no walls

or cover in the housing unit bathrooms and showers, forcing Plaintiffs to be exposed fully nude to members of the opposite sex, including visiting attorneys and civilians, homosexuals, and sexual predators, while in various stages of undress, using the toilets, and showering, and by placing Securus video visitation cameras within feet of, and in direct, unobstructed view of the showers so that Plaintiffs are fully exposed - and recorded nude - to the public on a daily basis;

6.   Defendant Grady Judd has a policy by custom of conducting opposite-sex searches of inmates and Plaintiffs in the nude, and has done so to Plaintiffs on a daily and ongoing basis;

7.   It is Sheriff Grady Judds' policy by custom practiced by his jail deputies to inflict cruel and unusual punishment before adjudication of guilt by inflicting physical, psychological and emotional pain in practice of forcing Plaintiffs and inmates to remain awake until and through 11 p.m. "count" of inmates, at which time inmates must physically

present their identification cards to be scanned, thereafter waking inmates up at 3 a.m. for breakfast, right after which they are required to remain in bed despite common knowledge that such practice is very unhealthy after eating; also daily subjecting inmates to freezing cold temperatures, forcing inmates to remain on their beds under their blankets, and which air blows out of vents covered and lined with black-colored mold which causes upper-respiratory and sinus infections upon inmates such that becoming ill in jail is the norm; also daily verbally abusing and degrading speech employed by jail staff toward inmates; daily disgusting food service and kitchen practices of not using warming or heating carts and instead moving meal trays from the kitchen to housing units in the open air so the food arrives cold and on unclean trays which food from prior meals remains stuck on the trays and absorbs commercial-grade disinfectants and detergents which are poisonous when being consumed with the meals and which will probably cause cancer in inmates, has caused headaches, bleeding of gums, tiredness, and delerium, calculated by Defendants to have the same effect as when coercion of confessions was prominent, as further alleged in the following paragraph.

8. The aforesaid cruel and unusual punishments are intentionally inflicted and calculated by the Defendants to be imposed prior to adjudication of guilt so as to cause severe physical, mental, and emotional pain and anguish upon inmates in an effort to coerce and steer Plaintiffs and inmates into a willingness to do ANYTHING to get out of jail, which includes pleading guilty though they otherwise would not, even if it means going to prison, as it is common knowledge that the prison environment is much better than the jail environment, having more freedoms, programs, and privileges than in jail;

9. The aforesaid punishments prior to adjudication of guilt and/or sentencing coupled with the Defendants' intentionally-coordinated efforts to overcrowd the jail and courts have caused conflicting interests to arise between the Plaintiffs and the Public Defender and Regional Counsel, from under funding, under-staffing, excessive caseloads, and thus inability to adequately represent inmates, and the Defendants have, in their conspiracy to overcrowd for monetary gain, have deprived Plaintiffs and inmates of a fair trial as the

Public Defender and Regional Counsel have therefore become unable to carry out their legal and ethical obligations, forsaken their obligations to Plaintiffs, and instead conspire with the Defendants to overcrowd the jails and prisons for monetary gain, securing convictions by systematically spending insufficient-to-no-time-at-all with Plaintiffs in preparation for trial, completely failing to investigate, intentionally failing to obtain evidence in support of defenses, allowing "Parker" holds to remain illegally in effect, though baseless, all the while with their attorney-client relationships only consisting of counsel informing Plaintiffs and pretrial detainees of the "State's [Plea] offer," and only pressuring them to "take the plea" and "plead guilty" while knowing little-to-nothing of the facts of the case or having hardly discussing the cases with their clients, systemically converting the overcrowded courts into courts of common pleas of "guilty" rather than trial courts, while obstructing justice, witness tampering, misleading about the charges, not providing discovery documents, not informing or discussing available defenses, repeatedly requesting continuances and thus delaying

trial unnecessarily, and only working with the State Attorney to obtain the convictions and, essentially, being no counsel at all.

10. The aforesaid acts and omissions of Defendants are not merely isolated incidents, but symptomatic of a much larger problem: excessive caseload in the Public Defender and Regional Counsel's offices preclude effective representation of indigent clients;

11. Sheriff Grady Judd and the State of Florida have contracted with Securus, JPAY, and Global Tel-link to provide tablets, video-visitation kiosks, e-mail services, and phone services to inmates;

12. Securus, JPAY, and Global Tel-link together service more than 80% of calls placed by inmates throughout the United States. To facilitate these services, the contracting government (State of Florida) and Sheriff Grady Judd enter into contracts with these companies to service the jail and prisons. The terms of the contracts include both the rates that these companies will charge to consumers and inmates, as well as the "site commission", a percentage of the revenue made which these companies must pay Grady Judd and Florida,

13. Sheriff Grady Judd, the State of Florida, and the Director of the Florida Department of Corrections ("FDOC") engaged in ultra vires taxation for which they do not have statutory authority in violation of the Florida Constitution;

14. The Sheriff, State, and FDOC extracted unlawful fees from Plaintiffs beyond their statutory authority in violation of Florida law;

15. GTL, Securus, and JPAY engaged in unfair and deceptive trade practices;

16. GTL, Securus, and JPAY charged exorbitant fees and used these fees to fund kickbacks to the Sheriff, State, and FDOC, which the State then uses to pay the State's Judges, Public Defenders, State Attorneys, and Regional Counsel's salaries, causing conflicts of interest between Plaintiffs and Defendants, and wholly denies Plaintiffs their rights to unbiased and impartial Judges free from financial interests in convicting and imprisoning them;

17. The Sheriff and FDOC have acted outside of the authority granted to them by the Florida legislature

by procuring the services of GTL, JPAY, and Securus that were deployed, in part, to raise revenues, and because the sheriff's revenues are raised for Polk County, the Defendants stand to benefit from jailing Plaintiffs in the Jail, together with all inmates who use these services, because the county is required by sec. 14, article V of the Florida constitution, to fund the cost of construction or lease, maintenance, utilities and security of facilities for the circuit and county courts, public defenders' offices, state attorneys' offices, regional counsel's offices, and the offices of the clerks of the circuit and county courts performing court-related functions. (F.S. 29.008)

18. The State has waived sovereign immunity by receipt of federal financial assistance which it has divided, in part, with the other Defendants Polk County, the Sheriff and FDOC;

19. Plaintiffs have suffered monetary losses as a direct and proximate result of Defendants' conspiracy to monopolize and capitalize on imprisoning and incarcerating Plaintiffs and other inmates and prisoners, totaling more than $25,000.00

20. Defendants state of Florida, FDOC, Grady Judd, and Polk County entered into exclusive contracts with GTL, Securus, JPAY, and Smart Communications, granting them control over jail and prison inmate calling system ("ICS");

21. Plaintiffs and their families are charged grossly unfair and excessive phone, video visitation, email, and canteen charges which are nothing but money-making schemes to force family members and Plaintiffs desperately trying to maintain contact with their families to pay for totally unrelated jail, county, or state expenses, or give up their lifelines of communications, and the rates charged are so exorbitant as to deprive prisoners of phone access altogether where they've become unaffordable, discriminating against the poor and indigent;

22. The ICS payments unreasonably burden the exercise of 5th Amendment rights to just compensation, violate the Federal communications Act, the Common Law of unjust enrichment, and Florida's Unfair Trade Practices and Consumer Protection Laws, unreasonably forcing Plaintiffs and their families alone to bear public costs that should be borne by the public as a whole, and bear no reasonable nexus or rough proportionality to the required payments or cost to the Defendants.

D. RELIEF REQUESTED:    Plaintiffs request:

1.    Declaratory relief which declares the aforesaid acts and omissions of Defendants unlawful and repugnant to the Florida and United States Constitutions;

2.    Declaratory judgment that the revenues generated and used to pay the Defendants' costs and salaries violates the laws and constitutions of Florida and the U.S.;

3.    Declaratory judgment that the excessive caseload in the Public Defender and Regional Counsel's office precludes effective representation of Plaintiffs;

4.    Enjoin Defendants from renewing, or entering into new, ICS contracts under which they receive commissions or fees that exceed the reasonable cost of providing their services after determination of such cost by the Court, and prohibit Defendants, while the current challenged contracts remain in effect, from using the commissions they receive under their contracts for any purpose other than placement in a court-supervised fund for any purpose other than, ultimately restoring such funds back to the Plaintiffs and/or their families who paid charges from which said commissions were taken to the extent of said commissions;

5. Declaratory judgment that, to the extent Plaintiffs were charged amounts that went to the sheriff and judges as commissions, they were charging unlawful taxes or fees;

6. Declaratory judgment that the State, sheriff, and FDOC engaged in ultra vires taxation for which it does not have statutory authority in violation of the Florida Constitution;

7. Declaratory judgment that the Sheriff extracted unlawful fees from Plaintiffs beyond its statutory authority in violation of Florida law;

8. Declaratory judgment that GTL, Securus, and JPAY engaged in unfair and deceptive trade practices;

9. Preliminary injunction prohibiting Defendants from monopolizing and capitalizing on Plaintiffs and using those funds to pay Defendants' salaries;

10. Prospective injunctive relief to enjoin Defendants from ongoing violations of the laws and the constitutions of Florida and the United States;

11. Declaratory judgment that the Judges' financial interest in convicting and imprisoning Plaintiffs violates due process;

12. an injunction to prevent the aforesaid wrongs from continuing to happen;

13. Compensatory and punitive damages in the amount of $100,000 against Defendants: Sheriff Grady Judd, Securus, JPAY, and Global Tel-link, jointly and severally;

14. The appointment of counsel;

15. That the Court exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. 1367;

E. VERIFICATION:

I DECLARE under penalties of perjury that the aforesaid is true and correct to the best of my information, knowledge, and belief.

Dated: 2-28-22                    By: _Adam Goldman_
                                       Adam Goldman
                                       Bk # 2142703
                                       Polk County Jail

Dated: 2-28-22                    By: _____
                                   Joshua M. Shaw
                                   Bk # 2140826
                                   Polk County Jail


Dated: 2-28-22                    By Charles Johnson
                                   Charles Johnson
                                   Bk # 2139704
                                   Polk County Jail


Dated: 2-28-22                    By: _____
                                   Jason Smith
                                   Bk # 2138843
                                   Polk County Jail